SAWVEL, Respondent, vs. BITTERLEE, Appellant.

*November 9 — November 28, 1893.*

*Verdict: Misconduct of jury: Separation.*

A jury having retired with leave, if they agreed upon a verdict, to seal it and separate, sealed a pretended verdict to the effect that they agreed to disagree, and separated. *Held,* that this was a wilful violation of duty, involving falsehood and fraud, and was of such a character as to impeach the motives of the jurors and the integrity of a verdict in favor of one of the parties returned by them after they had reassembled on the next day and the cause had been resubmitted to them; and a judgment based on the latter verdict cannot be upheld.

APPEAL from the Circuit Court for *Crawford* County.

Plaintiff was driving his team of horses across the Mississippi river in the night time, and the horses fell into a hole in the ice cut by the defendant and left unfenced and unguarded. One horse was drowned, and the other had his leg broken and was necessarily killed. This action is to recover the value of the horses. The plaintiff had a verdict for such value. A motion for a new trial was denied, and judgment entered for plaintiff pursuant to the verdict. Defendant appeals from the judgment.

For the appellant there were briefs by *Thomas & Fuller,* and oral argument by *O. B. Thomas.*

For the respondent there was a brief by *Wm. H. & J. P. Evans,* and oral argument by *J. P. Evans.* To the point that a verdict will not be set aside for mere separation of the jury in a civil action, unless it appears that there is a strong probability that they have been tampered with or influenced to return the verdict sought to be set aside, or that such conduct was occasioned by the prevailing party, they cited *Jackson v. Smith,* 21 Wis. 26; *Dozenback v. Raymer,* 13 Colo. 451; *Downer v. Baxter,* 30 Vt. 467.

LYON, C. J.   The question of the liability of defendant for the loss of plaintiff's horses was a fairly debatable one on the trial, and numerous errors going to the merits of the action are alleged as grounds for reversing the judgment.   None of these will be determined on this appeal, for the reason that on the trial an error was committed which is necessarily fatal to the judgment.

The case was submitted to the jury, and they retired in charge of an officer, with leave, if they agreed upon a verdict after court adjourned for the night, to seal their verdict and separate, and they were directed to bring in such verdict at the opening of the court the next morning. They separated at about 8 o'clock in the evening, and each juror went about his business.   At 8:30 the next morning they assembled in court, and returned what purported to be a sealed verdict.   This verdict was found to be as follows: " We fail to find for or against plaintiff or defendant. Therefore we have agreed to disagree."   The court seemed to consider this gross violation of its instructions to them, and of their duty as jurors, which was also a flagrant contempt of the authority of the court, as a harmless joke, although perhaps rather a stale one; and so, instead of punishing them for their misconduct, or even reprimanding them, the court, against the objection and exception of defendant, resubmitted the case to them on further instructions, and said in doing so: " I think, from what I have seen of your faces, that you are just as competent to determine this case as any other jury we are likely to get."   So the jury again retired to deliberate, and afterwards brought in the verdict for plaintiff upon which the judgment herein was rendered.

The law does not uphold any such practice as was adopted in this case, and it cannot be tolerated for a moment.   Nor can a judgment be upheld, rendered upon a verdict returned

by a jury guilty of such gross misconduct. On this proposition there seems to be no conflict of authority, and it would be surprising were there any such conflict. In *Shepherd v. Baylor*, 5 N. J. Law, 827, the jurors, after retiring to consider of their verdict, left the room forcibly and against the will of the officer in charge of them, and separated. Afterwards they were gotten together and returned a verdict. The supreme court reversed a judgment upon such verdict, saying of the conduct of the jurors, "It is such a deviation from duty, decency, and order as to impeach the motives, as well as the verdict, of any jury." The conduct of the jurors in the New Jersey case was less reprehensible than that of the jurors in this case, for here the jury separated on the false and fraudulent pretense that they had agreed upon a verdict when they had not. It were more honorable had they separated by brute force, without false pretense, as did the New Jersey jury.

In *Short v. West*, 30 Ind. 367, the jury had leave to return a sealed verdict. Late at night they sealed what purported to be a verdict, and the officer in charge of them allowed them to separate, believing they had agreed upon a verdict. Such alleged verdict was in fact that the jury had agreed to disagree. The jurors reassembled the next morning, destroyed the bogus verdict, and in its place substituted a verdict for one of the parties and returned the same to the court as the sealed verdict in the case, and judgment was rendered in accordance therewith. The supreme court of Indiana reversed such judgment, saying that the resort of the jury to misrepresentation to secure their separation exposes them to reasonable suspicion. True, there is a statute in Indiana which provides that the court may grant a new trial for either of many specified causes, one of which is " when the jury have separated without leave of the court after retiring to deliberate upon their verdict." But this

statute is merely declaratory of the common law, and the judgment in the Indiana case is rested upon common-law rules as well as upon the statute.

The common-law rule is thus stated by Chief Justice SHAW in *Comm. v. Roby*, 12 Pick. 496: "The result of the authorities is that where there is an irregularity which may affect the impartiality of the proceedings, as where meat and drink or other refreshments have been furnished by a party, or where the jury have been exposed to the effect of such influence, *as where they have improperly separated themselves*, or have had communications not authorized, there, inasmuch as there can be no certainty that the verdict has not been improperly influenced, the proper and appropriate mode of correction or relief is by undoing what is thus improperly and may have been corruptly done." Page 519.

In *Jackson v. Smith*, 21 Wis. 26, it is said the ancient rule on this subject has been relaxed. The modern rule is there stated as follows: "The weight of authority now is to the effect that in civil cases, if such improper conduct does not appear to have been occasioned by the prevailing party or any one in his behalf, and the court cannot see that it had or might have an effect unfavorable to the party moving for a new trial, the verdict ought not to be set aside." In that case the misconduct complained of was that during the trial one of the jurors expressed to a stranger to the action an opinion as to the credibility of certain witnesses, and said that the testimony of one of the parties looked dark. It was held that, within the rule stated by the court, the misconduct of the juror was not fatal to the judgment; that is to say, under the facts of that particular case, the court could not see that the misconduct of the juror "had or might have an effect unfavorable to the party moving for a new trial." Under the facts of the present case, the

court can see that the misconduct complained of was a wilful violation of duty by all the jurors, involving false-hood and fraud, and, as already suggested, is of such a character that it impeaches the motives of the jurors and the integrity of their verdict. As applied to this case, the rule laid down by Chief Justice SHAW in 12 Pick. is still in force, and the verdict and judgment cannot be upheld.

Thus far, we have considered the case just as it appeared to the circuit court when it was submitted to the jury after the jurors had thus unlawfully separated. But, on the hearing of the motion for a new trial, certain affidavits were read, to the effect that the case excited much interest in the city of Prairie du Chien where it was tried, and during the morning after the jury had thus separated, and before they assembled in court (as one of the affiants deposed), several of the jurors were in various saloons, drinking, and one of them had a conversation with a person not a juror, in the presence and hearing of plaintiff, who was in the same saloon, and the affiant says that from what he casually heard he thinks all these jurors were talking about the case, and that an effort was being made to prejudice the juror who was thus talking in presence of the plaintiff against defendant. There is no denial of the facts or inferences thus stated. The effect of these undisputed affidavits is to strengthen the impeachment of the motives of the jurors and the integrity of the verdict.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded for a new trial.